2026 IL App (1st) 232437-U

Fourth Division
Filed July 23, 2026

Nos. 1-23-2437, 1-24-0963, 1-24-1726, 1-24-1969 and 1-25-0152 (cons.)

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | |
|---|---|
| EARNEST, INC., | ) Appeal from the |
|     Plaintiff-Appellee, | ) Circuit Court of Cook County |
| | ) |
| v. | ) No. 2022 M1 716778 |
| | ) |
| DARRELL WALKER, LETITIA SWAIN, and | ) The Honorable |
| ALL UNKNOWN OCCUPANTS, | ) James A. Wright and Brian R. Porter, |
|     Defendant-Appellant. | ) Judges, presiding. |
| | ) |

JUSTICE OCASIO delivered the judgment of the court.
Presiding Justice Navarro and Justice Quish concurred in the judgment.

**ORDER**

¶ 1    *Held*: Trial court's judgment for possession is affirmed where plaintiff had capacity to maintain the eviction action, the finding that defendant was not a tenant was not against the manifest weight of the evidence, the trial court erred in finding proper service, but that error does not require reversal because defendant waived the objection by submitting to the trial court's jurisdiction at trial.

¶ 2    Defendant, Letitia Swain, appeals from the trial court's judgment granting plaintiff, Earnest, Inc., possession of a residential property. On appeal, Letitia contends that Earnest lacked capacity to maintain the action, that she was a tenant entitled to statutory notice protections, and that the trial court erred in finding that Earnest was entitled to possession. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        On June 12, 2018, a Judicial Sale Deed was recorded with the Cook County Recorder of Deeds Office listing Earnest, Inc., as the grantee of the property located at 10524 South LaSalle Street in Chicago. Earnest is a Canadian corporation and Nathan Turner is the managing member.

¶ 5        On October 26, 2022, Earnest filed a complaint for eviction naming Letitia Swain, Darrell Walker, and all unknown occupants as the defendants.

¶ 6        On November 18, 2022, the Cook County Sheriff's Office filed three affidavits indicating that service upon the defendants had been unsuccessful. Deputy Timothy Knox indicated that he attempted contact by knocking on the door three times; after receiving no answer, he left a contact card at the residence.

¶ 7        On February 3, 2023, Earnest caused the clerk of the trial court to issue two alias summons for Letitia and Walker, each advising only of the February 17, 2023, court date. Earnest requested that a special process server effectuate service on Letitia and Walker.

¶ 8        On February 16, 2023, Earnest filed three affidavits executed by purported special process server John Frazier. The affidavits, notarized on February 16, 2023, stated that Frazier had been appointed as special process server on February 3, 2023, and unsuccessfully attempted service on February 6, 8, and 10, 2023.

¶ 9        On March 23, 2023, Earnest filed an unexecuted affidavit for service by posting executed by Ebony Lucas, alleging inability to locate all defendants. The same day, Earnest filed three notices by posting requiring the defendants to appear on April 19, 2023. An April 19, 2023, order states that "all parties and their attorneys [were] present in court."

¶ 10       On June 1, 2023, Earnest filed both notices of motion and motions for default judgment, setting the matter for presentment on June 15, 2023.

¶ 11       On July 13, 2023, Letitia filed a *pro se* motion seeking to deny Earnest's motion for a default judgment and to dismiss the complaint with prejudice. Although styled as a motion to dismiss, the filing challenged the court's jurisdiction, Earnest's authority to proceed as a Canadian corporation,

and sufficiency of service. Letitia alleged that she had never been served with a summons, was unaware of any court proceedings, and had no knowledge of the posting.

¶ 12    On July 28, 2023, during a videoconference hearing, the trial court found that defendants had not been properly served because the online court record did not contain a motion authorizing a special process server and no evidence of service attempts by a special process server. The court further noted that, under applicable case law, service by sheriff posting is insufficient absent prior diligent service attempts, regardless of the affidavit that is on file saying that diligent attempts were made. Earnest's counsel stated that, on December 27, 2022, its motion for special process server was filed and that it had the order as well. The court noted that there was no motion in the clerk's system. The matter was continued for a status hearing.

¶ 13    On August 11, 2023, the trial court denied without prejudice Earnest's motion for default judgment and Letitia's motion to dismiss. The case was set for status on proper service on all defendants.

¶ 14    On September 5, 2023, Letitia and Earnest's counsel both appeared at a status hearing conducted via videoconference. The court advised Earnest's counsel that there were no affidavits of service appearing in the digital court file. Counsel stated that the sheriff's office had executed service by posting on April 4, 2023. The court advised counsel that, even if he read the documents in open court, said affidavits had to be uploaded to the digital court file. The trial court found that service by posting had been properly performed and granted Letitia leave to obtain counsel. Earnest was granted seven days to file the proof of service with the clerk. Within seven days, on September 11, 2023, Earnest filed proof of service. Thereafter, the court entered an order transferring the case to the presiding judge for trial assignment.

¶ 15    A bench trial was held in November 2023. Letitia participated in the trial through counsel. During trial, Earnest stipulated that the Swains, with Turner's consent, invested significant amounts—exceeding $50,000—in labor and restoration expenses to improve the property in anticipation of acquiring it following the pandemic.

¶ 16    On November 9, Letitia's counsel filed a limited scope appearance, and on November 30, counsel filed a general appearance.

¶ 17    Letitia testified that she and her husband entered into an oral agreement with Turner in April 2020 whereby she and her husband (Cephus Swain, who is not a party to this appeal), Swain entered into a verbal lease agreement with Turner, whereby they would occupy the property as tenants, undertake its repairs in lieu of payment of monthly rent, and subsequently acquire ownership of the property from Turner. Letitia testified that she had paid property taxes, maintained rental insurance, and expended substantial sums improving the property in reliance on that agreement. During cross-examination, Letitia acknowledged that she emailed Turner regarding having someone watch the property because of concerns about vandalism, although she maintained that she was already residing at the property at that time.

¶ 18    Turner testified that he never entered into a lease agreement with Letitia, never agreed that she could reside at the property without paying rent, and never agreed upon a rental term. Turner further testified that he permitted Letitia to enter the property to secure and repair it after she informed him that the property had been vandalized.

¶ 19    Letitia argued that Earnest failed to establish the prerequisites for an eviction action. First, Letitia contended Earnest lacked standing to maintain the action because it was a Canadian corporation that was not registered to do business in Illinois. Second, Letitia asserted that Turner's own affidavit identified Letitia as a tenant, which constituted an admission that she occupied the property as a tenant. Letitia argued that Earnest could not avoid the ordinary meaning of that term because the affidavit was prepared with the assistance of counsel and verified by Turner under oath.

¶ 20    Letitia further argued that, because she was a tenant, Earnest was required to comply with statutory notice requirements applicable to eviction actions. According to Letitia, she was never served a five-day, ten-day, thirty-day, or other notice terminating her occupancy. Letitia also challenged the sufficiency of Turner's affidavit, asserting that portions of it were not based on personal knowledge, including statements concerning service of a notice for possession. Letitia

maintained that Earnest failed to present competent evidence establishing proper notice and, therefore, failed to prove or establish its right to possession.

¶ 21     Earnest contended that compliance with the notice requirement was demonstrated by submitting the notice for immediate possession, along with proof of service, at the time the complaint was filed. Earnest's counsel pointed out that Letitia's testimony mentioned not receiving five-day, ten-day, or thirty-day notices but did not claim she missed receiving the notice for immediate possession. Earnest also emphasized that Letitia never disputed the service of this notice. Lastly, Earnest argued that the evidence did not prove the existence of a tenancy, so it should have the right to possess the property.

¶ 22     The trial court focused on whether Letitia was a *bona fide* tenant. Although Turner's affidavit referred to Letitia as a tenant, the court determined she did not meet this definition and therefore did not qualify for protection under eviction statutes. Reviewing the evidence, the court observed that Earnest permitted Letitia to access the property specifically to secure and repair it following reports of vandalism. There was no lease, rental agreement, or documentation suggesting a landlord-tenant relationship. Instead, Letitia made improvements to the property with the possibility of purchasing it in mind. The court pointed out that Letitia may have grounds to seek reimbursement for her expenses, but such claims were not relevant to these eviction proceedings. In conclusion, the court determined Earnest had a superior right to possession and granted an order awarding Earnest possession against Letitia Swain and all unknown occupants, without a money judgment, and dismissed defendant Walker with prejudice.

¶ 23     Following the judgment for possession entered on November 30, 2023, Letitia submitted several postjudgment motions and notices of appeal contesting various orders related to enforcement of the judgment. These included motions to quash service, motions to vacate, motions to reconsider, and requests for extensions of time to enforce the eviction order. Letitia also filed several notices of appeal, which were later consolidated with this appeal.

¶ 24     Letitia sought stays of enforcement in both this court and the trial court. Although temporary stay proceedings occurred, no stay ultimately prevented enforcement of the eviction judgment.

¶ 25    On April 16, 2024, Letitia submitted a petition to quash, along with objections to Earnest's motion requesting an extension of time for enforcement of the eviction order. This filing was accompanied by a memorandum of law and a supporting affidavit. The trial court denied that petition, granted Earnest's motion to extend time for enforcement of eviction and extended enforcement of the November 30, 2023, eviction order for an additional 120 days. Letitia appealed those rulings on April 30, 2024.

¶ 26    The eviction was effectuated on Letitia on May 16, 2024, and the sheriff's affidavit was filed the following day.

¶ 27    On May 17, 2024, the trial court concluded that it lacked jurisdiction because the sheriff's office effectuated the eviction on Letitia on May 16, 2024, and ordered the matter stricken from the call.

¶ 28    Thereafter, Letitia submitted a motion for Rule 137 sanctions against both Earnest and its counsel, alleging they misrepresented that defendants had been served by posting and that misrepresentation led to an eviction judgment and her alleged unlawful eviction while appeals from the orders issued on November 30, 2023, April 18, 2024, and April 23, 2024, remained pending. Letitia also filed an emergency verified section 2-1401 petition seeking to vacate the August 11, 2023, and September 5, 2023, orders.

¶ 29    On July 31, 2024, pursuant to this court's May 24, 2024, remand order for the sole purpose of allowing the trial court to consider the pending section 2-1401 petition and motion for Rule 137 sanctions, the trial court found that Letitia submitted to the court's jurisdiction by participating in the November 9, 2023, and November 30, 2023, trial proceedings on the merits and thereby waived any challenge to personal jurisdiction. The court denied the section 2-1401 petition and motion for Rule 137 sanctions and *sua sponte* sanctioned Letitia's counsel under Illinois Supreme Court Rule 44.

¶ 30    Letitia moved to reconsider the July 31 order. The trial court denied that motion as moot and denied all requested relief, including sanctions, concluding that Letitia voluntarily submitted to the court's jurisdiction prior to the entry of judgment.

¶ 31       Letitia filed additional notices of appeal from those rulings. On November 7, 2024, this court consolidated appeals Nos. 1-24-0963, 1-24-1726, 1-24-1969, and 1-25-0152 with appeal No. 1-23-2437. Earnest did not file an appellee's brief. Therefore, we are resolving this appeal using Letitia's brief and the existing record, since the matters raised can be addressed without needing a brief from the appellee. See *First Capitol Mortgage Corp. v. Talandis Const. Corp.*, 63 Ill. 2d 128, 133 (1976).

¶ 32                                    II.  ANALYSIS

¶ 33       Letitia challenges the trial court's judgment for possession on the grounds that Earnest lacked standing, that she was a tenant entitled to statutory notice, and that the action arose from allegedly fraudulent conduct. Resolution of the appeal requires this court to determine whether Earnest, as the holder of title to the property, was a proper party to maintain the action and whether the trial court's finding that Letitia was not a tenant was against the manifest weight of the evidence. Those issues are dispositive of Earnest's notice argument and, ultimately, Letitia's right to possession of the premises.

¶ 34                      A.  Earnest's Capacity to Maintain an Action

¶ 35       Letitia argues that the trial court erred in denying her pretrial *pro se* motion to dismiss the complaint with prejudice under section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2024)) because Earnest is not a proper party plaintiff. Letitia argued in her *pro se* motion that Earnest is a Canadian company and did not obtain authority from Illinois Secretary of State to file this action as required by section 13.70(a) of the Business Corporation Act of 1983. 805 ILCS 5/13.70(a) (West 2024). We review the dismissal of a section 2-619 motion *de novo*. *Doe v. University of Chicago Medical Center*, 2015 IL App (1st) 133735, ¶ 35.

¶ 36       Letitia contends Earnest may not maintain this action because it is a foreign corporation not authorized to transact business in Illinois. See 805 ILCS 5/13.70(a) (West 2024). However, the record reflects that Earnest held title to the property and sought possession through this forcible action. Letitia's allegations that she paid property taxes, maintained rental insurance, and incurred

renovation expenses in anticipation of purchasing the property concern the parties' alleged agreement do not establish that Earnest was transacting business in Illinois. Neither "maintaining *** any proceeding" nor "owning, without more, real or personal property" constitute transacting business under Illinois law. *Id.* § 13.75(a)(1), (8). Therefore, we find that the trial court did not err in denying Letitia's *pro se* motion based on Earnest's alleged inability to maintain the action as a foreign corporation.

¶ 37                    B. The Rent-Based Rental Assistance Program Notice

¶ 38        Letitia also contends that Earnest's complaint was defective because it failed to attach the rent-based rental assistance agreement upon which the action was allegedly based. This argument is forfeited because Letitia did not raise this alleged pleading deficiency in her motion to dismiss or otherwise present it to the trial court. A party may not raise new issues for the first time on appeal. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing"). Accordingly, the issue is forfeited.

¶ 39                                  C.  Tenant Status

¶ 40        We next consider whether the trial court incorrectly decided that Letitia was not a tenant. Letitia argued that she resided on the property under an oral arrangement, which permitted her to purchase it after paying for expenses, improvements, taxes, insurance, and renovations. However, Earnest disputed both the existence of this agreement and its specific terms.

¶ 41        We review a judgment entered after a bench trial under the manifest weight of the evidence standard. *Dargis v. Paradise Park, Inc*., 354 Ill. App. 3d 171, 177 (2004). The rationale for this deferential standard is that the trial court, as the trier of fact, is uniquely positioned to observe witness demeanor, evaluate credibility, and weigh the evidence. *Battaglia v. 736 N. Clark Corp*., 2015 IL App (1st) 142437, ¶ 23. "A judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on evidence." *Judgment Services Corp. v. Sullivan*, 321 Ill.App.3d 151 (2001).

¶ 42    Generally, a landlord-tenant relationship is created through a lease or other agreement, under which a person, the tenant or lessee, obtains possession and occupancy of the premises of another, the landlord or lessor, in exchange for consideration, generally involving the payment of rent. 24 Ill. L. and Prac. *Landlord and Tenant* § 1 (2026). The relationship between a landlord and tenant is contractual. *Fuller Family Holdings, LLC v. Northern Trust Co.*, 371 Ill. App. 3d 605, 620 (2007). Although aspects of a landlord-tenant relationship may be governed by state and local landlord-tenant laws, the relationship is created through the agreement of the parties. *Spanish Court Two Condominium Ass'n v. Carlson*, 2014 IL 115342, ¶ 20. A "tenant" has been defined as one who holds or possesses land or other real estate by any kind of right, either in fee simple, in common or in severalty, or for life or years at will, or one who has the occupation or temporary possession of land whose title is in another. *Urban Investment & Development Co. v. Maurice L. Rothschild & Co.*, 25 Ill. App. 3d 546, 552 (1975). Chicago's landlord-tenant ordinance defines a tenant as "a person entitled by written or oral agreement, subtenancy approved by the landlord or by sufferance, to occupy a dwelling unit to the exclusion of others." Chicago Municipal Code § 5-12-030(j) (adopted July 22, 2020). Whether a landlord-tenant relationship existed under the particular facts presented was a question for the trial court.

¶ 43    The record substantiates the trial court's determination that Letitia did not occupy the property as a tenant. Although Letitia asserted the existence of an oral agreement, her description of this understanding did not constitute a lease. Rather, she contended that her occupation was based on the anticipation of a future purchase. Letitia also argued that Turner made a judicial admission by referring to her as a "tenant" in an affidavit. Judicial admissions are defined as deliberate, clear, and unequivocal statements regarding concrete facts within a party's knowledge. *1550 MP Road LLC v. Teamsters Local Union No. 700*, 2019 IL 123046, ¶ 37. However, legal conclusions do not qualify as judicial admissions. *Id.* ¶ 38. The trial court specifically considered Turner's statement and determined that the use of the word "tenant" alone did not establish a landlord-tenant relationship. The legal classification of their relationship was based upon the underlying facts rather than terminology used in affidavits.

¶ 44    Turner testified that he never granted Letitia tenancy rights but permitted her access for securing and repairing the property following vandalism. The trial court found that no lease was executed, no rent was agreed upon or paid, and no rental term was set. Instead, it found that the evidence indicated that Letitia performed repairs and improvements with the expectation of eventual purchase. Having heard testimony from both parties, the trial court was best positioned to evaluate credibility and resolve evidentiary inconsistencies. Based on the totality of the evidence, the trial court reasonably concluded that Letitia's relationship to the property was not one of tenant, and thus statutory notice requirements applicable to tenants were not triggered. As there is no clearly contrary evidence in the record, the trial court's finding does not conflict with the manifest weight of the evidence.

¶ 45                          D.  Statutory Notice

¶ 46    Next, Letitia argues that Earnest failed to provide the notices under the Eviction Act. Under the Illinois Eviction Act, many notice provisions are specifically directed at tenants and lessees. However, Illinois eviction actions are not limited to tenants. An eviction action may also be brought against occupants that unlawfully withhold possession. 735 ILCS 5/9-102(a)(2) (West 2024). Because the trial court found that Letitia was not a tenant, she was not entitled to notice of termination of a tenancy. See *id.* § 9-211. Although Letitia may not be classified as a tenant, however, this does not negate all notice obligations; she remains entitled to general due process notification regarding the eviction proceeding.

¶ 47    The remaining question is whether Earnest properly served Letitia with the eviction action. The record reflects that the issue of service was litigated before trial. On September 5, 2023, after previously finding that defendants had not yet been served and continuing the matter for further proceedings, the trial court determined that service by posting had been properly performed. The case thereafter proceeded to trial.

¶ 48    Section 9-107 of the Code of Civil Procedure (*id.* § 9-107) governs constructive service of process in eviction actions. *Corlis v. Edelberg*, 2018 IL App (1st) 170049, ¶ 12. Strict compliance

with statutes governing service of process is required. *Citimortgage, Inc. v. Cotton*, 2012 IL App (1st) 102438, ¶ 15. A plaintiff in an eviction action must properly serve an individual defendant with process in order to vest the trial court with personal jurisdiction necessary for judgment. *Id*. Before resorting to constructive service, the plaintiff must file an affidavit establishing that the defendant or unknown occupant is either not a resident of Illinois, has departed the state, cannot be located after due inquiry, or is concealed within the State, and that diligent inquiry has failed to reveal the defendant's or unknown occupant's residence. 735 ILCS 5/9-107 (West 2024). Once these affidavit requirements are satisfied, the plaintiff may effect constructive service by either (1) posting and mailing notice or (2) publication and mailing in accordance with section 2-206. *Id*.

¶ 49　　　　Here, the record further reflects that Earnest initially attempted to effect personal service through the sheriff on all named defendants. Those attempts were unsuccessful, and the sheriff left a notice at the premises. Earnest thereafter retained a special process server, whose affidavit stated that personal service was attempted on three separate occasions on different days and was unsuccessful. However, the online court record did not contain an order authorizing a special process server. Moreover, the affidavit merely identifies the dates, times, and address associated with each attempted service but provides no evidence describing the specific efforts undertaken on each occasion to effectuate service. Instead, the affidavit merely states that allegedly Darrell Walker refused to accept the summons and does not indicate whether this alleged refusal occurred on all three service attempts or only on a single occasion, leaving the court without evidence as to what transpired during each individual attempt to effect service. At the time of service in this case, private detectives serving process in Cook County must be appointed by the trial court. 735 ILCS 5/2-202 (West 2024). Consequently, the special process server's attempts did not satisfy the statutory requirements governing service of process and could not serve as the requisite diligent inquiry supporting constructive service. Earnest nevertheless proceeded with service by posting. The process server's affidavit indicated that he posted the notice on the door and mailed a copy of the notice by first-class mail. Although the trial court found on September 5, 2023, that service by

posting had been properly accomplished, that finding was erroneous because the statutory prerequisites for constructive service were not satisfied.

¶ 50 Nevertheless, we agree with the trial court that Letitia waived her objection to personal service. Letitia argues that the trial court erred in so finding. She contends that her first filing, a *pro se* motion to dismiss, expressly challenged the court's personal jurisdiction and the sufficiency of service, thereby preserving those objections before any substantive participation occurred. According to Letitia, her subsequent court appearances, trial participation, limited-scope appearance, and general appearance filed with an express reservation of jurisdictional objections did not constitute voluntary submission to the court's jurisdiction and could not retroactively cure any alleged defective service. Letitia further maintains that because she consistently challenged personal jurisdiction throughout the proceedings, the trial court never acquired personal jurisdiction over her, rendering the September 5, 2023 order finding service by posting and the November 30, 2023 eviction judgment void.

¶ 51 We disagree. Although the trial court erred in concluding that service by posting had been properly accomplished because the statutory prerequisites for constructive service were not met, that error did not preserve Letitia's jurisdictional objection indefinitely. Under section 2-301(a), a party may object to personal jurisdiction by filing a motion to quash service of process before any other pleading or motion other than a motion for extension of time to answer or otherwise appear. 735 ILCS 5/2-301(a) (West 2020). However, under section 2-301(c), an objecting party forfeits any error in the court's ruling on jurisdiction when the party takes part in further proceedings, unless the objection was that the party was not amenable to process issued by a court of this state. *Id*. § 2-301(c); *In re Commissioner of Banks & Real Estate,* 327 Ill. App. 3d 441, 464 (2001). Specifically, section 2-301(c) states "Error in ruling against the objecting party on the objection is waived by the party's taking part in further proceedings unless the objection is on the ground that the party is not amenable to process issued by a court of this State." *Id*. A defendant may not simultaneously litigate the merits of an action while preserving a challenge to the court's personal jurisdiction. See *Lord v. Hubert*, 12 Ill. 2d 83, 87 (1957) (a party cannot, by voluntary action, invite

the court to exercise jurisdiction and at the same deny that jurisdiction exists). To hold otherwise would permit a litigant to fully contest the merits of the case, await the outcome, and then, after an adverse judgment, revive a jurisdictional challenge to obtain a second opportunity to litigate the same controversy.

¶ 52    Here, after the trial court rejected Letitia's argument that the court lacked personal jurisdiction over her, she issued a Rule 237 notice to plaintiff and then participated in the bench trial on the merits of the case. She never argued that she was not amenable to process issued by a court of this state, and thus, under section 2-301(c), she was deemed to have waived her challenge to personal jurisdiction. See *In re Detention of Lieberman*, 356 Ill. App. 3d 373, 378-79 (2005); *Gardens v. Wereko*, 2022 IL App (1st) 210222-U, ¶¶ 56-57. Moreover, on November 9, 2023, Judge James A. Wright explicitly cautioned Letitia that participation in the trial would subject her to the court's jurisdiction. Despite that warning, Letitia chose to participate in the merits proceedings. We can conclude that because she participated in the trial, she waived all objections to personal jurisdiction as of November 9, 2023 and the court's eviction order of November 30, 2023 (and all orders subsequent to November 9, 2023) are not void.

¶ 53                              E.  Postjudgment and Eviction Issues

¶ 54    In the postjudgment portion of the appeal, Letitia argues that the trial court continued to make legal and procedural errors after entering the November 30, 2023 eviction order.

¶ 55                          1.  Moot After Eviction Notice Was Posted

¶ 56    Letitia argues that the trial court erred when it determined posting of an eviction notice by the sheriff on May 16, 2024, rendered her motions and pleadings moot and caused the court to lose jurisdiction over the case. She asserts that the eviction did not actually transfer possession of the property to Earnest and as a result, she contends that there remained a live controversy regarding possession and the trial court retained authority to rule on the issues she had raised.

¶ 57    Letitia's core argument is that the sheriff's eviction did not actually deliver possession of the property to Earnest because her husband, Cephus, remained in the home. Letitia notes that Cephus

was never made a party to the case, never served with a demand for possession, and never served with the complaint or summons. Letitia claims the eviction order is invalid against him since he was not made a party to the action. According to Letitia, Cephus remained in physical possession of the property after the sheriff's attempted eviction, demonstrating that Earnest never obtained actual possession.

¶ 58　　　　Letitia further argues that the procedural history of the case supports her position. She notes that the summons defined "unknown occupant" as individuals living at the property whose names were unknown, yet Cephus was never formally added as a defendant. She also notes that the February 3, 2023, alias summons was issued for Letitia and Walker and not for any unknown occupants. Additionally, she asserts that Earnest never sought leave to amend the complaint to include Cephus as a defendant. Letitia argues that these omissions prevent Earnest from claiming that the eviction lawfully removed all occupants from the property.

¶ 59　　　　Letitia distinguishes this case from *Poulos v. Reda,* 165 Ill. App. 3d 793 (1987), arguing that the possession issue here is not moot. In *Poulos*, the appeal concerning possession became moot because the defendants could no longer be restored to possession after the lease expired, nevertheless the claim for rent remained viable. By contrast, Letitia contends that possession remains unresolved because Cephus continues to occupy the property. She therefore maintains that the trial court incorrectly treated the matter as moot and improperly replied on the assumption that Earnest had obtained possession.

¶ 60　　　　Finally, Letitia contends that the trial court was misled by representations that she had been successfully evicted and that Earnest had gained possession of the property. She argues that if the court had known that Cephus remained in possession after the sheriff's attempted eviction, it would not have concluded that the case was moot or that the trial court lacked jurisdiction. Accordingly, she asks this court to vacate the May 17 and May 24, 2024 orders and hold that the trial court retained jurisdiction because Earnest never obtained actual physical possession of the property.

¶ 61　　　　We disagree with Letitia and conclude that the issue of possession is moot. Letitia was removed pursuant to the order of possession executed and no effective relief concerning possession

can now be granted. Letitia's reliance on *Poulos* is misplaced. In *Poulos* the court declined to dismiss the entire appeal because issues concerning monetary liability remained pending. At the same time, the court recognized that the defendants could no longer be restored to possession. Here, Letitia seeks relief concerning possession, yet the order of possession has already been executed, and Letitia is no longer in possession. Accordingly, *Poulos* supports the conclusion that the possession controversy is moot because no meaningful possessory relief can be granted.

¶ 62    The purported or alleged continued occupancy by Cephus does not preserve a live controversy because he was not a party to the underlying action or this appeal. Any possessory rights Cephus may assert are separate from Letitia's rights and cannot be adjudicated in this proceeding. This court cannot restore possession to Letitia without adjudicating the rights of a nonparty occupant. We therefore conclude that Letitia's challenge to the judgment of possession is moot.

¶ 63    2. Denial of the Section 2-1401 Petition Without an Evidentiary Hearing

¶ 64    Letitia next argues that the May 24 and July 31 orders were entered in error as the trial court improperly denied her petition brought under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2024)) without first conducting an evidentiary hearing. Specifically, Letitia argues that the court should have held an evidentiary hearing regarding personal jurisdiction before denying her request to vacate the August 11, September 5, and November 30, 2023 orders.

¶ 65    We review *de novo* a trial court's ruling on a section 2-1401 petition alleging that a judgment is void for lack of personal jurisdiction (*Deutsche Bank National Trust Co. v. Hall-Pilate*, 2011 IL App (1st) 102632, ¶ 12) and its entry of judgment on a section 2-1401 petition on the pleadings, without an evidentiary hearing. *In re Marriage of Harnack*, 2014 IL App (1st) 121424, ¶ 53. Whether an evidentiary hearing is required depends upon whether the petition raises disputed issues of material fact. *People v. Vincent*, 226 Ill. 2d 1, 9 (2007).

¶ 66    Letitia asserts that her petition raised substantial factual disputes regarding service of process, jurisdiction, and the validity of prior court orders. Letitia contends that because these issues depended on disputed facts rather than purely legal questions, the court should have allowed an

evidentiary hearing before ruling on her petition. As we have already found, however, the trial court acquired personal jurisdiction when Letitia appeared and participated in the trial on the merits after being expressly advised that doing so would subject her to the court's jurisdiction. By providing substantive testimony and defending the action on the merits, she waived any remaining objection to personal jurisdiction. Accordingly, her section 2-1401 petition did not present a disputed issue of material fact requiring an evidentiary hearing. Rather, the issues raised in the petition could be resolved from the existing record and presented questions of law that the trial court was authorized to decide without conducting a hearing.

¶ 67    The record established waiver of any personal-jurisdiction objection through Letitia's general appearance at trial; therefore, the trial court did not err in denying the section 2-1401 petition without conducting an evidentiary hearing.

¶ 68    Our determination that Letitia voluntarily submitted to the trial court's jurisdiction also renders unnecessary any consideration of whether Earnest's failure to respond to the section 2-1401 petition resulted in admissions concerning the adequacy of service. Resolution of the waiver issue is dispositive of her jurisdictional challenge, and any admissions regarding the adequacy of service would not alter our conclusion that Letitia waived her objection to personal service.

¶ 69                              3.  July 31, 2024 Order

¶ 70    Letitia next challenges the factual findings and legal conclusions contained in the July 31, 2024 order, arguing that the record demonstrated no motion had been filed requesting the appointment of a special process server and no order appointing a special process server existed, despite representations made by Earnest's counsel to the contrary. According to Letitia, this information demonstrated that the November 30, 2023, eviction judgment was procured through misrepresentations concerning service of process and established due diligence in bringing her section 2-1401 petition.

¶ 71    We agree that the record does not reflect a properly filed motion or order appointing a special process server and that the trial court erred in concluding constructive service was valid. Nevertheless, those errors do not warrant reversal because, as discussed above, Letitia subsequently waived any objection to personal jurisdiction by voluntarily participating in the trial on the merits after being advised that doing so would submit her to the court's jurisdiction.

¶ 72                    4.  Improper Extensions of the Eviction Enforcement Period

¶ 73    Letitia argues that the trial court lacked jurisdiction to grant motions extending the period for enforcing the eviction order. She contends that because jurisdictional defects remained unresolved, the court had no authority to enter additional orders extending enforcement. Consequently, she maintains that the extensions granted to Earnest were invalid and should be vacated. Because we have concluded that Letitia voluntarily submitted herself to the court's jurisdiction by participating in the trial proceedings, her argument lacks merit.

¶ 74                            5.  The May 16, 2024 Eviction

¶ 75    Having concluded that Letitia waived her challenge to personal jurisdiction by voluntarily participating in the trial on the merits, we briefly address her remaining contentions.

¶ 76    Letitia argues that the May 16, 2024, eviction process violated Illinois law and due process protections. She asserts that the sheriff's enforcement efforts affected individuals who were not properly named as defendants in the eviction action, including her husband. Letitia contends that the eviction process was legally defective and should be declared invalid because those individuals were allegedly not parties to the lawsuit and had not been afforded an opportunity to defend their interests.

¶ 77    This argument is unavailing. As discussed above, the trial court acquired personal jurisdiction over Letitia when she voluntarily participated in the trial on the merits after being advised that doing so would submit her to the court's jurisdiction. Accordingly, the November 30, 2023, judgment for possession was not void for lack of personal jurisdiction and remained enforceable.

Letitia has not identified any legal basis demonstrating that the sheriff's execution of the eviction order rendered the judgment invalid.

¶ 78                                6.  Sanction Issues

¶ 79     Finally, Letitia challenges sanctions entered against her attorney and argues her own motion for Rule 137 sanctions was improperly denied without an evidentiary hearing. She argues that the record does not support ruling on the sanctions petition without conducting an evidentiary hearing. According to Letitia, the court should have allowed factual development before resolving the competing sanctions issues. She contends that the failure to do so constituted reversible error.

¶ 80     We review the trial court's decision regarding sanctions for an abuse of discretion. *Lake Environmental, Inc. v. Arnold*, 2015 IL 118110, ¶ 16. The record supports the trial court's determination that sanctions were warranted, and Letitia has not demonstrated that any disputed issue of fact required an evidentiary hearing before the court ruled on the competing sanctions requests. In her motion, Letitia sought sanctions against Earnest and its counsel, alleging counsel falsely represented that defendants had been served by posting, which she contends resulted in the entry of the eviction during the pendency of the appeals. The trial court concluded that Earnest's counsel's inaccurate statements resulted from poor record keeping and bad memory, not sanctionable conduct. The court further noted that the misstatement was made only in response to the court's own inquiry after the court observed that no motion or order appointing a special process server appeared in the record. Thus, the court found that Earnest did not engage in conduct warranting sanctions under Rule 137. Because the basis for Letitia's motion for sanctions was apparent from the record and she has not identified any disputed factual issue that required an evidentiary hearing, the trial court did not abuse its discretion by denying the motion without conducting a hearing. Moreover, the trial court found counsel falsely represented the origin of certain photographs and violated Illinois Supreme Court Rule 44 by photographing the judge during court proceedings. On this record, the court's sanctions ruling was not arbitrary or unreasonable. Accordingly, we find no abuse of discretion.

¶ 81    Letitia also argues that Earnest's claim to possession arose from fraudulent conduct relating to the parties' alleged agreement that she would eventually be permitted to purchase the property. However, the purpose of an eviction action is to determine the parties' immediate right to possession, and matters that are collateral to that issue generally may not be litigated in the proceeding. See 735 ILCS 5/9-106 (West 2024). The trial court correctly declined to adjudicate any fraud-based claims and noted that, although Letitia may possess a separate cause of action to recover expenditures made in improving the property, such claim was beyond the scope of the eviction proceeding.

¶ 82                                  III.  CONCLUSION

¶ 83    The trial court did not err in concluding that Earnest had capacity to maintain the action, its finding that Letitia was not a tenant was not against the manifest weight of the evidence, and the trial court erred in concluding that service was properly accomplished, but the service error does not require reversal because Letitia waived the objection by submitting to the trial court's jurisdiction at trial. Accordingly, the judgments of the trial court are affirmed.

¶ 84    Affirmed.